IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA, )
)
    Plaintiff/ )
    Counter-Defendant, )
)
       v. ) 1:14CV921 (JCC/IDD)
)
BRICKYARD VESSELS, INC., )
)
    Defendant/ )
    Counter-Claimant. )

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff National Union Fire Insurance Company of Pittsburgh, PA's ("National Union" or "the insurer") Motion to Dismiss Defendant Brickyard Vessels, LLC's ("Brickyard" or "the insured") Amended Counterclaim. [Dkt. 25] For the reasons discussed below, the Court will grant National Union's Motion to Dismiss the Amended Counterclaim.

### I. Background[1]

On March 9, 2014 in the Biscayne Bay off the coast of Miami, Florida, marine vessel CONTENDER 36 collided with

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Accordingly, the following facts, taken from Plaintiff's Complaint and Defendant's Amended Answer and Counterclaim, are accepted as true for purposes of this motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

1

MASTERPIECE, a marine vessel owned by Brickyard, causing injury to two passengers aboard the CONTENDER 36 and physical damage to both vessels. (Compl. [Dkt. 1] at 3.) At the time of collision, Brickyard was the named insured and MASTERPIECE was the covered vessel under an AIG Recreational Marine Insurance Policy ("the Policy") issued by National Union. (Id. at ¶¶ 8, 37.) Brickyard submitted a claim under the Policy for damage to the MASTERPIECE. (Id. at ¶ 16.) National Union investigated the claim but determined there was no coverage for any loss stemming from the collision because Brickyard breached certain warranties contained in the Policy. (Id. at ¶ 33.)

First, National Union contends MASTERPIECE was ineligible to carry any passengers for hire as a foreign-built vessel, and by chartering and carrying passengers for hire at the time of the collision, MASTERPIECE breached the Occasional Charter Warranty. (Compl. ¶¶ 19, 20.) Second, National Union alleges that MASTERPIECE violated U.S. Coast Guard regulations because at the time of the collision, the Captain of MASTERPIECE did not possess a U.S. merchant mariner credential or U.S. Coast Guard license, and the number of passengers aboard MASTERPIECE exceeded the maximum number permitted by U.S. Coast Guard regulations. (Id. at ¶ 26-29.) Two days after notifying Brickyard of the coverage denial, National Union filed this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,

seeking a declaration from this Court that it is not obligated to cover any damage, injury and/or loss arising out of the collision, nor is it obligated to provide a defense or liability coverage for Brickyard against any claims arising out of the collision. (Id. at 4, 6.)

Brickyard filed an answer and counterclaim for one count of "statutory bad faith" against National Union, contending National Union violated Florida law by failing to honestly settle Brickyard's claim under the Policy in good faith. (Answer & Countercl. [Dkt. 5] at 11-12 (citing Fla. Stat. §§ 624.155(1)(b)(1), 626.9541(1)(i)(3)(a)-(b)).) In count two, Brickyard claims it is entitled to punitive damages as a result of National Union's alleged bad faith. (Id. at 12-13.) Brickyard filed an amended answer and counterclaim as a matter of right under Rule 15 of the Federal Rules of Civil Procedure. (Am. Answer & Countercl. [Dkt. 15].) Brickyard's two-count counterclaim brought pursuant to Florida law, however, substantively remained the same.

National Union now moves to dismiss Brickyard's amended two-count countcounterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Dkt. 25] National Union contends that Virginia law applies to the underlying substantive claims in this admiralty action, and thus argues that Brickyard's counterclaim brought under Florida statute fails to

3

state proper claim for relief. (Pl.'s Mem. [Dkt. 26] at 2-9.) Brickyard opposes National Union's motion and argues that Florida law applies to the substantive claims as this Court sits in diversity. (Def.'s Opp'n [Dkt. 28] at 7-11.) If the Court determines that Virginia law applies, Brickyard asks in the alternative for leave to amend the counterclaim, and does not attempt to argue the sufficiency of the counterclaims under Virginia law. (Id. at 11-12.)

The Court finds that Virginia law applies to the substantive claims in this admiralty action, and therefore, because Brickyard's counterclaim fails to state a cognizable claim for relief under Virginia law, the motion to dismiss will be granted.

## II. Standard of Review

In deciding a Rule 12(b)(6) motion, a court must be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

4

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. Moreover, a court is not required to accept legal conclusions as true. District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979).

### III. Analysis

Before the Court analyzes the sufficiency of Brickyard's counterclaim, it must first determine what law governs those substantive claims.

#### A. Choice of Law

"The first step in a choice of law analysis involving multiple grounds for subject matter jurisdiction is to determine the basis of the court's jurisdiction." Zepsa Indus., Inc. v. Kimble, No. 3:08cv4-RJC, 2008 WL 4891115, at *1 (W.D.N.C. Nov. 11, 2008). The parties agree that the underlying dispute in

5

this matter sounds in contract; specifically, a recreational marine insurance policy. National Union asks for a declaration that it is not required to pay out insurance proceeds under the Policy, and Brickyard brings counterclaims relating to National Union's performance under the Policy. (Pl.'s Mem. at 1 ("National Union filed its Complaint for Declaratory Judgment on July 23, 2014 seeking a declaration that there is no coverage under a contract of recreational marine insurance . . . for damages."); Def.'s Opp'n at 8 ("Brickyard's Counterclaims implicate performance of a contract because they concern National Union's failure to pay for collision-related losses and to otherwise satisfy its obligations to Brickyard under the Policy.").) The parties disagree, however, as to the basis of this Court's jurisdiction, and relatedly, as to what choice-of-law rules this Court should employ to determine what state law applies to the substantive contract claims.

In the Complaint, National Union invokes this Court's jurisdiction under theories of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and admiralty jurisdiction pursuant to 28 U.S.C. § 1333. (Compl. ¶¶ 3, 4.) Brickyard only invokes this Court's diversity jurisdiction in the Amended Counterclaim. (Am. Answer & Countercl. ¶ 4.) National Union urges the Court to apply federal choice-of-law rules as a federal court sitting in admiralty, (Pl.'s Mem. at 2-5.), while Brickyard asks the

6

Court to apply Virginia choice-of-law rules as a federal court sitting in diversity, (Def.'s Opp'n at 7). If jurisdiction is based upon admiralty, then federal common law governs the choice-of-law determination, State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 414 (2d Cir. 1990), but if jurisdiction is based upon diversity, then the Court must apply Virginia choice-of-law rules as the law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction[.]" 28 U.S.C. § 1333(1). As stated, this dispute involves performance obligations under a contract, i.e., the Policy, and thus, the Court examines the subject matter of the contract to "determine whether the services performed under the contract are maritime in nature." Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 612 (1991). An action involving a marine insurance policy "is indisputably within the original admiralty and maritime jurisdiction of the federal courts." Wiles v. Boat/U.S., Inc., No. 2:07cv524, 2008 WL 501265, at *4 (E.D. Va. Feb. 20, 2008) (citing Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1955) ("Since the insurance policy here sued on is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction.")). The

7

contract at issue here is a marine insurance policy; indeed, the AIG Recreational Marine Policy expressly provides insurance coverage for MASTERPIECE, an 80-foot Motor Yacht. Thus, the contract is "maritime in nature" and jurisdiction of this Court lies in admiralty. Accordingly, the Court applies federal common law in its choice-of-law determination.

**1. Admiralty Choice-of-Law Analysis**

A federal court sitting in admiralty must apply federal choice-of-law rules. Assuranceforeningen Skuld, 921 F.2d at 414. "Under federal choice-of-law rules, we determine which state law to use by 'ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved.'" Advani Enterprises, Inc. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998) (quoting Lauritzen v. Larsen, 345 U.S. 571, 582 (1953)) (additional citations omitted). This analysis, better known as the "most significant relationship test," includes an assessment of the following factors:

> (1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

8

Advani Enterprises, 140 F.3d at 162 (citations omitted); see also Carney Family Inv. Trust v. Ins. Co. of N. Am., 296 F. Supp. 2d 629, 632 (D. Md. 2004) (applying these factors as set forth in the Restatement (Second) of Conflict of Laws § 188 (1971)). In Wilburn Boat Co., the Supreme Court held that even though cases involving a maritime insurance policy fall within the original jurisdiction of federal courts, a district court must apply state law in the absence of federal legislation or an otherwise conflicting federal rule. 348 U.S. at 320-21.

Consequently, at issue here is whether Virginia law or Florida law applies to Brickyard's substantive counterclaims. The "most significant relationship test" suggests that Virginia law applies, given the significant "points of contact" between Virginia and the "transaction," i.e., the Policy. Advani Enterprises, 140 F.3d at 162.

The first factor is inapplicable because the Policy does not contain a choice-of-law provision. (See Compl. Ex. A.) Accordingly, this factor does not weigh in favor of Virginia law or Florida law.

The second factor slightly favors application of Virginia law. National Union claims the Policy was "delivered" to Brickyard at its principal place of business in Herndon, Virginia, and that it was negotiated and entered into in Virginia. But Brickyard denies these claims. At the hearing,

9

Brickyard's counsel contended that the Policy was delivered to an agent in Florida, who eventually delivered the Policy to Brickyard's principal place of business in Virginia.  Given that Brickyard's Virginia address is on the face of the Policy, and that the Policy was ultimately delivered to that Virginia address – even if it was delivered in a round-about way – this suggests Virginia law governs the substantive claims.  See Seneca Specialty Ins. Co. v. Dockside Dolls, Inc., No. 3:12cv19-REP-DJN, 2012 WL 3579879, at *3 (E.D. Va. June 22, 2012) ("Dockside's Virginia business address is on the face of the Policy, and there is no allegation otherwise disputing that the policy was delivered to its offices in Virginia . . . . Thus, Virginia law governs the interpretation of the Policy."), Report & Recommendation adopted by, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012).

Third, National Union's performance under the Policy would occur in Virginia, and thus, this factor weighs in favor of applying Virginia law.  At issue in this case is whether National Union must pay insurance proceeds or otherwise provide coverage to Brickyard under the Policy for the damage sustained by MASTERPIECE.  Such proceeds would necessarily be delivered to Brickyard at its principal place of business in Herndon, Virginia, the address listed on the Policy.  Stated differently, "[National Union's] failure to pay insurance proceeds does not

10

implicate a duty that it perform any act in [Florida], regardless of whether the subject property is located therein. Rather [National Union's] duty to perform, if any, required it to deliver insurance proceeds to [Brickyard's] offices in . . . Virginia." Seneca Specialty Ins. Co., 2012 WL 3579879, at *3 (citing Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas, Inc., 846 F.2d 319, 325 (5th Cir. 1988) (finding that the place of performance was in Texas, because "payment of insurance proceeds was also to occur in Texas at the plaintiff's place of business"); Recreonics Corp. v. Aqua Pools, Inc., 638 F. Supp. 754, 757 (D.S.C. 1986) (additional citation and explanatory parentheticals omitted)). Accordingly, the third factor suggests Virginia law applies.

The fourth factor weighs in favor of applying Florida law, because the location of the subject matter of the Policy, MASTERPIECE, is moored in Miami Beach, Florida. (See Compl. Ex. A. at 3.) This is the only factor, however, that supports application of Florida law.

Lastly, the fifth factor weighs in favor of applying Virginia law, because Brickyard's principal place of business is in Virginia. (Compl. ¶ 2; Am. Answer & Countercl. ¶ 2.) Otherwise, the parties do not have significant contacts to either Virginia or Florida. National Union is incorporated in Pennsylvania with its principal place of business in New York,

11

and Brickyard is incorporated in Delaware.  (Compl. ¶ 1; Am. Answer & Countercl. ¶ 2.)  Accordingly, Brickyard's principal place of business in Virginia suggests Virginia law should apply.  Moreover, as a corporate defendant, Brickyard should know generally that suits are likely to be brought in Delaware where it is incorporated, or in Virginia where it is principally located.  See Daimler AG v. Bauman, 134 S. Ct. 746, 760 (U.S. Jan. 14, 2014) ("These [two] bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.").

Ultimately, Brickyard's principal place of business in Herndon, Virginia is most significant to this choice-of-law analysis.  The Policy was allegedly delivered in Virginia, and National Union's performance under the policy would occur in Virginia.  Thus, the Court concludes that Virginia law should apply to the substantive claims in this case.

### B. Sufficiency of Brickyard's Counterclaims

National Union argues that both Count One and Count Two in Brickyard's Amended Counterclaim should be dismissed for failure to state a claim under Virginia law.  (Pl.'s Mem. at 6-9.)  Count One in Brickyard's Amended Counterclaim alleges "statutory bad faith" pursuant to Fla. Stat. §§ 624.155(1)(b)(1), 626.9541(1)(i)(3)(a)-(b).  (Am. Answer & Countercl. ¶¶ 28-31.)  Brickyard claims that National Union

12

"failed to attempt in good faith to settle the Claim when . . . it should have done so . . . failed to adopt and implement standards for the proper investigation of the Claim . . . [and] made a material misrepresentation to Brickyard for the purpose and with the intent of [a]ffecting settlement of claims, loss, or damage." (Id. at ¶ 29.) In Count Two, Brickyard requests punitive damages. (Id. at ¶ 32-35.)

While the Virginia Unfair Insurance Practices Act "forbids various insurance practices, including failure in bad faith to settle claims for which liability is reasonably clear . . . . It is clear that the Virginia Supreme Court would not read the Unfair Insurance Practices Act to create a private right of action in tort." A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 674 (4th Cir. 1986). Additionally, under Virginia law, breach of contract or liability for acting in bad faith in relation to contractual duties alone is insufficient for an award of punitive damages. Kamlar Corp. v. Haley, 299 S.E.2d 514 (1983) (citing Wright v. Everett, 90 S.E.2d 855 (1956)). Instead, punitive damages are only allowed in a breach of contract action when accompanied by an allegation "of an independent, willful tort, beyond the mere breach of a duty imposed by contract . . . ." Kamlar Corp., 299 S.E.2d at 518.

Brickyard does not attempt to argue that the amended counterclaim states a proper claim for relief under Virginia

13

law, but instead requests leave to amend.  (Def.'s Opp'n at 11-12.)  Even construing the factual allegations in the counterclaim in a light most favorable to Brickyard, both Counts One and Two fail to state a claim for relief under Virginia law, as briefly discussed above.  Accordingly, the motion to dismiss will be granted, and Brickyard will be granted leave to amend.

### IV. Conclusion

For the foregoing reasons, the Court will grant National Union's Motion to Dismiss the Amended Counterclaim.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| November 4, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |